**BROWN, Price Administrator v. SACHER et al.**

District Court, S. D. New York.

Dec. 6, 1943.

Mitchell Jelline, Chief Enforcement Atty., of New York City, for plaintiff.

Leo Wechsler and George J. Beldock, both of New York City (Leo Wechsler, George J. Beldock, Mordecai M. Richter, and Michael M. Kirsch, all of New York City, of counsel), for defendants Sacher Fur Co. and others.

RIFKIND, District Judge.

After oral argument upon the application of the Office of Price Administration for a temporary injunction, the only question left open for decision was the scope of the order. The application was made upon the complaint and affidavits which showed that defendants were dealers in furs, skins and peltries; that since May 11, 1942, there has been in effect, with respect to defendant, General Maximum Price Regulation (7 Fed.Reg., 3153, et seq.), issued pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq.; that pursuant to Section 1499.11(b) of the Regulation, defendants were required to prepare, on or before July 1, 1942, and keep for examination by any person a "base period statement"; that pursuant to Section 1499.12 they were required to keep and make available for inspection, by the Office of Price Administration, "customary sales records" and "current pricing records"; that in September, 1943, defendants were visited by an investigator of the plaintiff and that they admitted to him that they omitted to keep "current pricing records" and that their "base period statement" was deficient, in that it failed to give a description or identification of each commodity sold and a statement of their customary allowances, discounts and other price differentials.

The requested injunction order provides that the defendants be restrained (1) from selling furs, unless and until the defendants prepare and keep for examination a

"base period statement", "customary sales records" and "current pricing records", as required by the mentioned sections of the Regulation; (2) "from doing or omitting to do any other act in violation of said regulation as heretofore or hereafter amended"; (3) from offering, soliciting or agreeing to do any of the foregoing.

The proposed order also provides that defendants be directed to prepare the three records above mentioned.

The question presented is whether the clause hereinabove numbered (2) is proper. The statutory authority for the plaintiff's application is Section 205(a) of the Emergency Price Control Act of 1942, which reads as follows: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

The relevant portion of Section 4 mentioned in Section 205(a) reads as follows: "It shall be unlawful * * * for any person to sell or deliver any commodity * * * in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

■ In support of the propriety of the requested injunction, plaintiff relies upon the quoted language of the statute. Plaintiff professes to find therein an intention to authorize broad injunctions. I see no such intention spelled out or discoverable by implication. The statute authorizes the restraint of "such acts or practices", and the grammatical structure of the sentence compels a reference to the antecedent of "such", which is the acts or practices which "any person has engaged or is about to engage in".

The language of the statute is no wider in scope than that quoted in N.L.R.B. v. Express Publishing Company, 1941, 312 U. S. 426, 432, 61 S.Ct. 693, 85 L.Ed. 930, which is authority against the plaintiff's contention.

■ The plaintiff contends, however, that under the Express Publishing Case the injunctive order may extend to acts and practices similar or related to the proven violations and to practices whereof the danger of their commission in the future is to be anticipated from the course of defendant's conduct in the past. Granting this proposition and, indeed, in the light of N.L.R.B. v. Standard Oil Company, 2 Cir., 138 F.2d 885, November 1, 1943, interpreting the holding of the Express Publishing Company case, much more could be granted, it still does not follow that the very meagre facts here presented warrant an injunction as broad in scope as the one requested. No trial has yet been had, so that the considerations of expert administrative judgment, which prompted Mr. Justice Douglas to dissent in the Express Publishing case, do not apply. We know nothing of defendants' motives, wilfulness or negligence. True, they have violated those sections of the Regulation which go to the heart of the price control system, since ceiling prices are governed by the records. Does it follow that they would violate the registration provisions of the Regulation, Section 1499.15, or the posting requirements of Section 1499.13(a) (1)? If the Court of Appeals of this Circuit sees a lack of similarity between nylon hosiery, with respect to which an injunction was authorized in the presence of evidence of violation, and other hosiery, with respect to which an injunction was vacated by reason of the lack of evidence of violation, Henderson v. Burd, 2 Cir., 1943, 133 F.2d 515, 146 A.L.R. 714, then it seems to me that there is sufficient gap between violations of the record-keeping provisions and maximum price violations so as not to have proof of the first constitute a warrant for an injunction against the second.

■ The implication of plaintiff's request for the injunction under consideration should be viewed with knowledge of the fact that similar applications are simultaneously being decided with respect to a very large number of fur merchants representing the bulk of the fur trade in the New York market. By reason of the infraction of one or two provisions of the Regulation, the plaintiff would have the in-

dustry thereafter policed in all its OPA aspects by contempt proceedings. Not even the plea of administrative necessity in time of national emergency makes such a condition tolerable. Emergency conditions do not warrant a departure from the express mandate of the statute with respect to the scope of injunctions, 28 U.S.C.A. § 383; Rule 65(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The administrative burden placed upon the Office of Price Administration is indeed gigantic, but the injunction is not the only arrow in its quiver. Section 205 provides an assortment of legal, equitable and criminal sanctions for the enforcement of the price control statute.

The motion for preliminary injunction is granted; the order will be in a form consistent with this memorandum.