**BOWLES, Administrator, O. P. A., v. MAY HARDWOOD CO. et al.**

No. 9548.

Circuit Court of Appeals, Sixth Circuit.

Feb. 25, 1944.

David London, of Washington, D. C. (George J. Burke, Thomas I. Emerson, Fleming James, Jr., David London, David Reich, and Edward H. Hatton, all of Washington, D. C., and Raymond Stephenson, of Louisville, Ky., on the brief), for appellant.

Robert P. Hobson, of Louisville, Ky. (A. C. Van Winkle and Woodward, Dawson & Hobson, all of Louisville, Ky., on the brief), for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

Brown, former Administrator of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. (now succeeded), sued, pursuant to § 205(a), to restrain the appellees from further violation of § 4(a), asserting that in his judgment they had violated Maximum Price Regulation No. 146 as amended. Upon the filing of an amended complaint by the Administrator, reciting the revocation of certain maximum ceiling prices in Regulation 146, the appellees moved to dismiss the bill, as amended, because the question raised therein had become moot and of no legal effect. The motion was sustained and a judgment of dismissal having been entered, the Administrator appeals.

Regulation 146 set maximum prices for hardwood lumber in the Appalachian region. In the case of "non-recurring specials," grades of lumber which had not been quoted by the mill in its regular price list for 1941 and 1942, the price was to be calculated by applying to the prices specially promulgated for regular grades whatever differential would have been applied in October, 1941. Such price, however, was subject to approval or rejection by the Administrator. For this purpose the seller was required to submit a report to the Office of Price Administration within thirty (30) days of the contract date, and the price was considered approved unless rejected by the Administrator within thirty (30) days after he had received the report. The Regulation also provided that brokers' commissions on shipments from mill to buyer should be deducted from the amount received by the mill and not added to the buyer's price. In July and November, 1942, the appellees purchased white oak bending stock, a "non-recurring special," from a mill for direct shipment to Associated Shipbuilders. They added their commissions to the ceiling price resulting in payments by Associated in excess of the maximum permitted by the Regulation. On December 14, 1942, Maximum Price Regulation 281 superseded part of Regulation 146; it applied ceilings to oak bending stock considerably higher than those applicable under 146, and admittedly higher than the prices charged by the appellees in their July and November transactions with Associated. Notwithstanding this change in the Regulation the Administrator brought suit in February, 1943, against the appellees for charging too much, and against Associated for excess payment.

■ The appellees defend the judgment on the ground that Regulation 146 was so indefinite and uncertain as to make enforcement impossible in respect to white oak bending stock, and also on the ground that there is, in fact, no basis for granting an injunction against future violations because what was unlawful under Regulation 146 is no longer so under Regulation 281, and as a subordinate contention urge that § 205(a), relating to injunctions, is, by its terms, not mandatory but merely permissive, if, in the judgment of the court, the facts of a particular case demand it. Cf. Brown v. Hecht Co., App.D.C., 137 F.2d 689. We give no consideration to the first basis for supporting the judgment. The issue was neither raised nor tried. No answer was filed, and both the motion to dismiss and judgment were grounded solely upon the assumed moot character of the controversy. Nor are we at this time concerned with the question whether, by § 205(a), printed in the margin,[1] the issue of an injunction, in case of violation, is mandatory or rests within the sound discretion of the court, since discretion was neither sought nor exercised. The sole issue perceived is whether there exists an actual present controversy between the Administrator and the appellees in respect to the issue of an injunction, and upon this issue the language of § 205(a) becomes important without regard to whether its character is mandatory or permissive.

As we understand the argument it is to the effect that there can be no basis for granting an injunction against future violations of the Emergency Price Control Act, based upon past violation of price Regulation 146, in respect to the ceiling on white oak bending stock, because that ceiling has now been raised by Regulation 281, so that even if the appellees continue

[1] "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act * * * he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such a person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

sales of such stock at former prices, they no longer violate the applicable regulation and restraint is futile. The contention has seeming persuasiveness but complete understanding of the factual situation disclosed by the amended complaint, and matured consideration of applicable law, compels its rejection.

■ The circumstances under which, and the extent to which an administrative agency or a court is empowered to restrain future violations of law based upon past conduct, is fully and clearly expounded in N.L.R.B. v. Express Publishing Co., 312 U.S. 426, 435, et seq., 61 S.Ct. 693, 85 L.Ed. 930. There it was pointed out that the breadth of an administrative order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity and relation to those unlawful acts which have been found to have been committed in the past. While "A federal court has broad power to restrain acts which are of the same type * * * as unlawful acts which the court has found to have been committed, or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past," yet "The mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged." But, "It is a salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts." Pages 435, 436 of 312 U.S., page 699 of 61 S.Ct., 85 L.Ed. 930.

■ Accepting, as we must, these statements of principle underlying the power to restrain, our inquiry is directed to an examination of the alleged violations of Regulation 146 to determine whether they are similar or related to the acts sought to be restrained and to a consideration of the breadth and scope of the injunction prayed by the Administrator. In his amended complaint he asks that the appellees be restrained from buying or receiving any Appalachian hardwood lumber at prices higher than the maximum prices set forth in Regulation 146 or Regulation 281, and from selling, delivering, or offering for sale or delivery, any lumber at prices higher than the maximum prices set forth by any maximum price regulation, schedule or order adopted pursuant to § 2(a) of the Emergency Price Control Act. If, by this prayer, he seeks to restrain violation of price ceilings not presently established by existing regulations and so to restrain acts which, though presently lawful, may in the future become unlawful by reason of administrative regulations hereafter adopted, the injunction sought manifestly is too broad, for courts will not restrain future acts when there is no factual basis for determining whether such acts are closely related to or of the same character as the unlawful acts which form the basis of the complaint. But insofar as he seeks restraint of violation of existing price regulations, we have to determine whether such violations, if they should occur, are so inseparably associated with past unlawful acts or so similar to them in character that inevitably there follows an inference that one who commits one series of acts will be likely to commit another of like character, for, as the court said in the cited case, "To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past". Page 437 of 312 U.S., page 700 of 61 S.Ct., 85 L.Ed. 930.

■ A consideration of the amended complaint discloses that under Regulation 281 all Appalachian hardwood lumber of the varieties and classifications covered by 146, remain subject to the price ceilings established by that regulation, but that by § 1382.206 the ceiling is lifted on navy oak ship-stock alone, the purchase and sale of which formed the basis for the original complaint. In other words, the original regulation of the Administrator establishes price ceilings for all varieties of a generic classification of hardwood lumber based on geographic origin, while the modified regulation lifts the ceiling upon but a limited and specific grade of the general classification. Thus is the close relationship and similarity between the acts committed and the acts sought to be restrained, established. The appellees violated the regulation, and so it may be said that justification is not lacking for anticipating that one who has violated a general classifica-

tion in one respect may broach it in another. The refusal of an employer to bargain, is an unfair labor practice under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., but one wholly distinct from and unrelated to domination of a labor union and interference with its formation or administration, which is an unfair labor practice of differing character. The breach of a ceiling price on lumber controlled by a single regulation is a breach of the regulation, whether it is in respect to one variety included in the classification or another.

This is not a case like St. Pierre v. United States, 318 U.S. 751, 63 S.Ct. 769, in which the Supreme Court dismissed as moot an appeal from a sentence for contempt where the sentence had already been served. Nor is it a case like Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, and Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581, where subsequent to judgment a law intervenes and changes the governing rule and so "must be obeyed, or its obligation denied" [311 U.S. 538, 61 S.Ct. 349, 85 L.Ed. 327], because here the statute has not been repealed and the regulation, in its broader sweep, is still operative. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255. In the recent case of United States v. Hark, 64 S.Ct. 359, 362, the court clearly distinguished a regulation from the statute. "The reason for the common law rule that repeal of a statute ends the power to prosecute for prior violations is absent in the case of a prosecution for violation of a regulation issued pursuant to an existing statute which expresses a continuing policy, to enforce which the regulation was authorized. Revocation of the regulation does not repeal the statute; and though the regulation calls the statutory penalties into play, the statute, not the regulation, creates the offense and imposes punishment for its violation."

Another reason for the difference would appear to lie in the necessities of administration. If, in the complexity of a price ceiling on hundreds or thousands of varying kinds and grades of commodities, which from period to period must be revised to meet continuing changes in economic conditions, demand and supply, the effect of weather, labor supply and other elements upon production, past derelictions will not support injunctive restraint of similar or related acts, § 205(a) is rendered completely nugatory, as a means of enforcing the Act, and traders may not be brought into subordination of a regulation, except by a myriad of injunction suits, each limited to a particularized grade or species of a general classification, and based upon violation of the regulation only in respect to such grade or species.

Judgment reversed and the case remanded for further proceedings not inconsistent herewith.