**BOWLES, Price Adm'r, OPA, v. MAY HARDWOOD CO. et al.**

No. 542.

District Court, W. D. Kentucky,
Louisville Division.

Feb. 6, 1945.

Fritz Krueger and Homer Parrent, both of Louisville, Ky., for plaintiff.

Woodward, Dawson & Hobson, of Louisville, Ky., for defendant.

MILLER, District Judge.

The Price Administrator filed this action on February 4, 1943, to enjoin the defendants, May Hardwood Company, General Hardwood Company and Associated Shipbuilders, from selling and buying in the course of trade or business any Appalachian hardwood lumber at prices higher than the maximum prices set forth in the regulations adopted pursuant to Section 2(a) of the Emergency Price Control Act of 1942, Section 902(a), Title 50 U.S.C.A. Appendix. The complaint alleged that two transactions, one on July 10, 1942, and one on November 7, 1942, violated the provisions of Maximum Price Regulation No. 146, effective June 1, 1942, as amended. An amended and supplemental complaint filed on February 16, 1943, stated that Maximum Price Regulation No. 281 became effective on December 14, 1942, and superseded the provisions of Maximum Price Regulation No. 146. The action was subsequently dismissed as to the defendants General Hardwood Company and Associated Shipbuilders. The defendant, May Hardwood Company, conceded that the sales in question exceeded the maximum price established by MPR No. 146 and the Price Administrator conceded that they were within the limits provided by MPR No. 281. Accordingly, this Court entered an order on May 11, 1943, dismissing the action on the ground that the question therein had become moot. The Price Administrator appealed from this judgment, and on February 25, 1944, the Circuit Court of Appeals reversed the case and remanded it to the District Court for further proceedings not inconsistent with the views expressed in its opinion. See Bowles, Administrator, v. May Hardwood Company, 6 Cir., 140 F.2d 914. When the matter subsequently came on for hearing in the District Court the Price Administrator indicated that he intended to rely upon numerous transactions in addition to the two specifically referred to in the original complaint, and it appears that by agreement of parties the Price Administrator furnished to defendant's counsel a list of 67 such transactions. No formal amended complaint was filed in this respect, and, accordingly, the record also fails to contain any formal answer on the part of the May Hardwood Company, as there were no formal allegations to make answer to. The action was assigned to May 8, 1944, for trial and was heard on that day. At the trial both plaintiff and defendant apparently assumed that the issues included the additional 67 transactions, as evidence was offered by both sides on these issues and received without objection. Accordingly, the Court is treating the action as involving the 67 additional transactions referred to, to the same effect as if they had been specifically pleaded by the plaintiff and denied by the defendant.

## Findings of Fact.

1. On or about July 10, 1942, Bringardner Lumber Company sold to the defendant May Hardwood Company, a lumber wholesaler, a shipment totaling 11,487 board feet of white bending oak, a "non-recurring special" grade of Appalachian hardwood lumber at a total price of $1,670.76, less 8% brokerage commission and less 2% for payment with 15 days, said amount of $1,670.76 being the maximum price established for said lumber by the Office of Price Administration; said shipment originating at a mill owned and operated by said Bringardner Lumber Company and located in Path Fork, Harlan County, Kentucky, and being thereafter transported by railroad car directly from said mill to the shipyard of Associated Shipbuilders, Seattle, Washington. On or about July 10, 1942, the defendant, May Hardwood Company, sold to General Hardwood Company this shipment of lumber at a price of $1,771.57, less 2% for payment within 10 days, said price being approximately $65.38 in excess of the maximum price established for said shipment by Maximum Price Regulation No. 146.

2. On or about November 7, 1942, Bringardner Lumber Company sold to the defendant May Hardwood Company a

shipment totaling 8,934 board feet of white bending oak, a "non-recurring special" grade of Appalachian hardwood lumber at a total price of $1,258.88, said amount being the maximum price established therefor by the Office of Price Administration, said shipment originating at a mill owned and operated by said Bringardner Lumber Company and located in Path Fork, Harlan County, Kentucky, and being thereafter transported by railroad car directly from said mill to the shipyard of Associated Shipbuilders in Seattle, Washington. On or about November 6, 1942, the defendant, May Hardwood Company, sold to General Hardwood Company this shipment of lumber at a price of $2,004.41 less a total freight charge of approximately $465 and less 2% for payment within 10 days, said price being approximately $249.74 in excess of the maximum price established for said shipment by Maximum Price Regulation No. 146.

3. The defendant established its own ceiling price for shipments of the "non-recurring special" grades above referred to by a sale of such lumber in the latter part of 1942 which was at a price less than a price received by a competitor in selling the same type of lumber. This self-established ceiling price was not submitted by it to the OPA for approval, and was above the ceiling price established by MPR No. 146 as amended, but was not in excess of the ceiling price established therefore by MPR No. 281, effective December 14, 1942, which superseded MPR No. 146 as amended.

4. During the period of November 4, 1942, through August 20, 1943, the defendant May Hardwood Company made sixty-seven or more sales and shipments of Appalachian hardwood lumber to various purchasers. In approximately thirty of these it used a method commonly referred to as "upgrading." In its general aspects this method consisted in the defendant purchasing a quantity of lumber of a certain designated grade or quality and then subsequently reselling a portion of the same lumber as lumber of a higher grade and at a higher price. The defendant's President had 35 years experience in the hardwood lumber business. In purchases of such lumber made by him in the past the defendant received a rather uniform percentage of better grade lumber than was ordered and paid for, and this portion of the lumber could be properly re-graded and resold at the higher grade, so that the higher price so received was still within the maximum price provided by the Regulations. The inspection and grading of hardwood lumber is governed by the rules of the National Hardwood Lumber Association which contemplate that each piece of lumber in each specified grade should at least meet the minimum requirements of that grade, and in order to comply with this requirement there is some lumber in each grade that is better than the minimum requirement therefor. However, an effort was made by sellers to grade the lumber as correctly as possible so as to be both above the minimum requirement of that grade and below the minimum requirement of the next higher grade As a matter of fact in each shipment of hardwood lumber of a specified grade a certain percentage thereof will be of such quality as to correctly place it in the next higher grade, and such pieces could be so ascertained and properly regarded if a proper inspection was made by a competent inspector of the individual pieces in the shipment so received. In at least one instance a representative of the U. S. Navy used this method of "upgrading" and regraded some stock at the point of shipment and billed it according to such regrading. In the shipments referred to in this case, the practice of the defendant in the majority of the cases at least was not to make such an inspection of each individual piece but to upgrade the lumber so purchased and received according to a percentage which the defendant's President relied upon as being correct from his many years' experience in the hardwood lumber business. The purchaser of such regraded lumber from the defendant inspected it upon delivery by the defendant. In none of the shipments referred to was there any complaint by the purchaser that the lumber delivered by the defendant and received by the purchaser was of an inferior grade than the lumber invoiced to him.

5. In approximately seven of the shipments made during the period of November 4, 1942, through August 20, 1943, the defendant, May Hardwood Company, added an estimated freight charge, which was in excess of the freight actually paid by it when the shipment was made. The excess freight so charged was less than twenty-five cents per hundred. In a number of other shipments where the freight was also estimated by the defendant the freight charge so added was less than the actual freight paid by the defendant.

■ 6. The plaintiff claims that in five of the sales made by the defendant during the period of November 4, 1942, through August 20, 1943, the prices charged and received by the defendant were in excess of those allowed by the Maximum Price Regulation. The defendant claims that the lumber so sold was of a better grade than charged by the plaintiff and that its price was within the ceiling provided for such grade. The evidence on this point was conflicting and left the Court in doubt. Accordingly, on these shipments the plaintiff's contention is rejected.

### Conclusions of Law.

1. Jurisdiction of this action is conferred by Section 205(a) and (c) of the Emergency Price Control Act of 1942, Sections 925(a) and (c), Title 50 U.S.C.A. Appendix.

■■ 2. Maximum Price Regulation No. 146, effective June 1, 1942, authorized by Section 2(a) of the Act, established maximum prices for various types of hardwood lumber, including white oak, which originate at any mill located in the Appalachian area, which included the County of Harlan, Kentucky. It did not provide a specific dollars and cents ceiling but set out a procedure by which the seller could compute the ceiling price and then submit that price to the OPA for approval. The OPA could approve or adjust the submitted price which would then become the ceiling price for that particular mill. Section 1382.13(b) provided that "the maximum price which the wholesaler may charge is the price charged by the mill." On July 17, 1943, the Price Administrator issued Amendment No. 13 to Maximum Price Regulation No. 146, effective July 23, 1943, which placed on these special items and grades specific dollars and cents ceiling prices corresponding to the ceilings that had been given to mills who asked for prices for "non-recurring specials" prior to July, 1943. It was also the same ceiling price that would have been given to any mill or wholesaler who would have applied for a price for non-recurring specials prior to July, 1943, but for some reason or another had failed to so apply for price approval. Accordingly, these ceiling prices applied to the defendant even though it had neglected to apply for them and even though prior to July, 1943, they were not specifically set out in the Regulation in the form of dollars and cents prices. The defendant's method of establishing its ceilings by a sale in the latter part of 1942 was not authorized and was invalid insofar as it conflicted with the ceilings set by MPR No. 146 as amended. The sales by the defendant to General Hardwood Company on July 10, 1942, and November 6, 1942, exceeded the ceiling prices established by MPR No. 146 as amended. However, MPR No. 146 as amended was superseded by MPR No. 281, effective December 14, 1942. The sales by the defendant to General Hardwood Company on July 10, 1942, and November 6, 1942, were not in excess of the ceilings established for such shipments by MPR No. 281. Although these new ceilings did not become effective until after the sales complained of took place, yet they had been in effect approximately seven weeks at the time when the complaint herein was filed on February 4, 1943. At that time similar sales at the same prices would not have been violations of the existing maximum price regulation. This increase in the ceiling price is indicative of the fact that previous ceiling prices were either incorrectly computed or the result of insufficient data and information, and that the prices charged by the defendant were actually justified by existing conditions. The evidence does not indicate that the defendant contemplates making sales of such lumber in the future at any higher prices than previously used, and subsequent sales

at the same prices would not be a violation of the applicable maximum price regulation. Under the circumstances the Court feels that the two sales referred to do not furnish justification for an injunction with reference to future sales by the defendant of the same type of lumber. Under Section 205(a) of the Emergency Price Control Act of 1942, Section 925(a), Title 50 U.S.C.A. Appendix, the granting of an injunction upon a showing that the defendant has violated the applicable price regulation is not mandatory but is in the discretion of the Court. Hecht Company v. Bowles 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

3. The practice of "upgrading" of lumber is governed by Section 1382.4 (b), (5) and (6) of the Maximum Price Regulations which prohibits upgrading by

"(5) falsely or wrongly grading or invoicing lumber;

"(6) grading as a special grade lumber which normally is graded by the seller as a standard grade."

The practice employed by the defendant in upgrading the lumber in question without an inspection of each individual piece is practically certain to result in a false or incorrect grading in many instances. Yet the evidence fails to specifically show any instance where the upgrading actually resulted in a false or incorrect grading. The method employed by the defendant is, however, a very loose one, largely in the nature of a practical rule of thumb, which might be justified in the normal course of business in normal times with active competition existing in the industry generally. But it can not be considered as having any high degree of exactness, and is certain over a period of time to result in some incorrect grading, with the corresponding technical violation of the Maximum Price Regulations. Section 205(a) of the Emergency Price Control Act of 1942, Section 925(a), Title 50 U.S.C.A.Appendix, provides for the issuance of an injunction upon a showing by the Administrator that a person "has engaged or is about to engage" in acts which will constitute a violation of the Maximum Price Regulations. Accordingly, even though the evidence may not show with certainty that the defendant has violated the Maximum Price Regulations by the practices engaged in, yet it is a sufficient showing that it is about to engage in such violations and enough to justify the issuance of an injunction or other appropriate order provided for by Section 205(a) of the Act. The Court disapproves of the practice under present conditions and believes that it should be discontinued, but due to its recognized use in the lumber industry over a period of years in the past, and its actual use in the present case by a representative of the Navy, feels that the injunction prayed for by reason of these shipments is not justified in the absence of any showing that incorrect grading has actually taken place. The Court feels that a better solution of the problem would be to give the defendant the opportunity to discontinue its practice of upgrading without actual inspection of each piece of lumber involved and to continue the case on the docket for such further action as seems necessary or proper at a reasonable time in the future. Such an order is authorized by Section 205(a) of the Act which provides for the issuance of either an injunction "or other order" by the Court. See Hecht Company v. Bowles 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

4. Section 1382.11(f) of MPR No. 146 permits the seller to add to the maximum prices allowed under the Maximum Price Regulations the actual transportation costs paid by the seller, and provides that the following practice shall not be deemed a deviation from the use of actual transportation costs: "(1) the charging of a sum equivalent to the one-quarter of a dollar nearest to such transportation costs; * * *."

The Regulations therefore authorize the seller to estimate the freight charges provided he does so within the allowance of error permitted. Accordingly, in the opinion of the Court the actions of the defendant complained of in this respect in the shipments referred to do not justify the issuance of the injunction prayed for.

622

5. Although the Court in the exercise of the discretion conferred upon it by Section 205(a) of the Act does not feel that an injunction should issue against the defendant in this case at the present time, yet it also feels that this action should not, for the present at least, be dismissed. The defendant has strenuously insisted throughout the pendency of this action that it has acted entirely in good faith in attempting to comply with the regulations, which in many instances has no doubt furnished numerous practical difficulties. In declining to grant the injunction the Court feels that an additional period of time should elapse before the action is terminated in order to furnish proof of the defendant's good faith as so claimed. The case will accordingly be continued on the docket for a period of six months; the motion of the plaintiff for an injunction will be denied for the present without prejudice to its renewal, and to a reconsideration of both past and future conduct on the part of the defendant. Such an order is authorized by Section 205(a) of the Act and by the decision of the Supreme Court in Hecht Company v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.