BOWLES, Price Administrator, v.
LEITHOLD et al.

No. 8980.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 6, 1945.

Decided Dec. 27, 1945.

Abraham L. Shapiro, of Philadelphia, Pa. (Shapiro & Shapiro, of Philadelphia, Pa., on the brief), for appellants.

Charles Rembar, of Washington, D. C. (George Moncharsh, Deputy Administrator for Enforcement, and David London, Acting Director, Litigation Division, both of Washington, D. C., and Robert J. Callaghan, District Enforcement Atty., and Sydney M. Friedman, Enforcement Atty., Office of Price Administration, both of Philadelphia, on the brief), for appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

Only one question is involved in this appeal. That one question is rather important. The defendants violated the record-keeping provisions of GMPR[1] and action

---

[1] General Maximum Price Regulation (7 F.R. 3153 et seq.) as amended, provides: § 11 (§ 1499.11) "Base period records—Every person selling commodities or services for which, upon sale by that person, maximum prices are established by this regulation, shall:

"(a) Preserve for examination by the Office of Price Administration all his existing records relating to the prices which he charged for such of those commodities or services as he delivered or supplied during March 1942, and his offering prices for delivery or supply of such commodities or services during such month; and

"(b) Prepare, on or before July 1, 1942, on the basis of all available information and records, and thereafter keep for examination by any person during ordinary business hours, a statement showing:

"(1) The highest prices which he charged for such of those commodities or services as he delivered or supplied during March 1942, and his offering prices for delivery or supply of such commodities or services during such month, together with an appropriate description or identification of each such commodity or service; and

"(2) All his customary allowances, discounts, and other price differentials. * * *"

§ 12 (§ 1499.12) "Current records— Every person selling commodities or services for which, upon sale by that person, maximum prices are established by this Regulation, shall keep, and make available for examination by the Office

was brought pursuant to the Price Control Act.[2] They failed for twenty-seven months after the Regulation became effective to provide the Price Administrator with the information required from them as manufacturers of certain types of women's underwear. The information was furnished only after this suit had been begun, but was given prior to the date of hearing. The District Judge enjoined the defendants from further violation of the record-keeping provisions. He also enjoined them from violating price ceilings with regard to the goods manufactured by them.

The defendants do not contest the validity of the injunctive order so far as it relates to record-keeping. Indeed they could hardly do so if they would. They do object, however, to the injunction forbidding them to violate price ceilings. They say, correctly, that there was no allegation made against them charging them with violation of price ceilings. Therefore, they say, they should not be enjoined for what nobody has ever claimed they did or threatened to do. Their reliance is, naturally, upon the Express case, National Labor Relations Board v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; also New York, New Haven & Hartford, etc., R. Co. v. I. C. C., 1906, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515. The doctrine in the Express case is well known and has been applied since its pronouncement in this[3] and other[4] Circuit Courts of Appeal.

We think the general problem of injunctions in the type of case here considered is the same as that involved gen-

of Price Administration, records of the same kind as he has customarily kept, relating to the prices which he charged for such of those commodities or services as he sold after the effective date of this Regulation; and, in addition, records showing, as precisely as possible, the basis upon which he determined maximum prices for those commodities or services."

Section 1315.1557 of Maximum Price Regulation No. 220 was also breached. That section refers to reports for goods containing elastic. But as the District Court points out the defendants had discontinued manufacture of elastic garments and thus were "no longer subject to Maximum Price Regulation No. 220." With respect to the injunction, however, future breaches are guarded against and MPR 220 is treated in the same manner as the GMPR.

[2] Emergency Price Control Act of 1942 (56 Stat. 23) as amended, 50 U.S.C.A. Appendix § 925(a), 56 Stat. 33 provides: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Sec. 4(a), 50 U.S.C.A.Appendix § 904 (a), 56 Stat. 28, provides in part: "It shall be unlawful * * * to sell or deliver any commodity * * * in violation of any regulation or order under section 2 * * *."

Sec. 2(a), 50 U.S.C.A.Appendix § 902 (a), 56 Stat. 28, provides in part: [The Price Administrator] may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. So far as practicable, in establishing any maximum price, the Administrator shall ascertain and give due consideration to the prices prevailing between October 1 and October 15, 1941 (or if, in the case of any commodity, there are no prevailing prices between such dates, or the prevailing prices between such dates are not generally representative * * * then to the prices prevailing during the nearest two-week period in which, in the judgment of the Administrator, the prices for such commodity are generally representative * * *."

[3] N.L.R.B. v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39.

[4] Only a handful of cases have arisen under the Emergency Price Control Act which have had occasion to utilize the Express decision in considering scope of the injunction: Bowles v. Sacher, 2 Cir., 1944, 146 F.2d 186; Bowles v. Town Hall Grill, 1 Cir., 1944, 145 F.2d 680; Bowles v. Montgomery Ward & Co., 7 Cir., 1944, 143 F.2d 38; Bowles v. May Hardwood Co., 6 Cir., 1944, 140 F.2d 914. Of these the Sacher case, relied on several of the others which in turn had cited the Express case.

The United States Supreme Court has expressed its continued approval of the Express case view by utilizing it since. Regal Knitwear Co. v. N. L. R. B.,

erally in the granting of an injunction by an equity court. This view is fortified by the decision of the Supreme Court in the Hecht case (Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 591, 88 L.Ed. 754)[5] and by the Senate Committee Report[6] in presenting the statute to that body. There is a latitude of discretion on the part of the District Court in the granting of this form of relief and the order is not to be upset if an appellate court finds it to be within the bounds of that discretion. It is not necessary to cite authorities for the proposition that the discretion is not an uncontrolled one but is a legal discretion to be exercised within the limits of rules of law. With that as a background, we proceed with the injunction issued in this case.

The case for the Administrator may be stated in this wise: These defendants failed for more than two years to file the information material required of them. The record does not show why they failed to file the required reports. Whatever their state of mind may have been, the effect was as complete a disregard of the wartime control statute as if they were operating at the North Pole. It is not correct to say, as the defendants do, that the effect of the violation was complete at the end of the first day's failure to file so far as that failure bears upon their state of mind and attitude toward wartime price controls. They did withhold the information for twenty-seven months and only supplied it after the lawsuit had been brought against them. Furthermore, this information was the only foundation on which their price structure could be raised if that structure was to be in accordance with law. Their ceiling price was to be built upon sales during base period, or other information.[7] One who

1945, 324 U.S. 9, 65 S.Ct. 478; United States v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024; Union Pacific R. Co. et al. v. United States, 1940, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453.

In cases not arising under the Emergency Price Control Act, the Express decision has been repeatedly used. Some of the many cases follow: N.L.R.B. v. May Dept. Stores Co., 8 Cir., 1944, 146 F.2d 66; N.L.R.B. v. Walt Disney Productions, 9 Cir., 1944, 146 F.2d 44; N.L.R.B. v. Gluek Brewing Co., 8 Cir., 1944, 144 F.2d 847; N.L.R.B. v. Standard Oil Co. et al., 6 Cir., 1944, 142 F. 2d 676; Commonwealth Edison Co. v. N.L.R.B., 7 Cir., 1943, 135 F.2d 891; N.L.R.B. v. Sunbeam Electric Mfg. Co., 7 Cir., 1943, 133 F.2d 856; Hartung v. Hilda Miller, Inc., 1943, 77 U.S.App.D. C. 164, 133 F.2d 401; N.L.R.B. v. American Rolling Mill Co., 6 Cir., 1942, 126 F.2d 38; N.L.R.B. v. Stone, 7 Cir., 1942, 125 F.2d 752; N.L.R.B. v. Algoma Net Co., 7 Cir., 1941, 124 F.2d 730; McQuay-Norris Mfg. Co. v. N.L.R.B., 7 Cir., 1941, 119 F.2d 1009; N.L.R.B. v. Mall Tool Co., 7 Cir., 1941, 119 F.2d 700; N.L.R.B. v. Ford Motor Co., 5 Cir., 1941, 119 F.2d 326; Singer Mfg. Co. v. N.L.R.B., 7 Cir., 1941, 119 F. 2d 131.

5 The Hecht case was primarily concerned with the question "whether the court has some discretion to grant or withhold such relief [as the Administrator sought as a matter of right under § 205(a) of the Emergency Price Control Act]." In considering the problem the Supreme Court, through Mr. Justice Douglas, said: "We are dealing here with the requirements of equity practice with a background of several hundred years of history." And again, a bit further in the opinion, "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." A few sentences later the Court goes on to say, "Hence we resolve the ambiguities of § 205(a) in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect." The opinion adds that, "Mr. Justice Frankfurter agrees that § 205(a) of the Emergency Price Control Act, apart from dispensing with any requirement for a bond, does not change the historic conditions for the exercise by courts of equity of their power to issue injunctions, according to which the Court of Appeals should now dispose of this cause."

6 Senate Report No. 931, 77th Cong., 2nd Sess. p. 10: "Such courts are given jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case." While this language is less specific than the Hecht case, the broad conception of jurisdiction envisaged by the legislative committee is only consonant with the general powers of a court of equity.

7 The ceiling prices of the commodities sold by defendants are determinable in one of four ways. Section 2(a) of

withholds the data on which ceiling price is based makes it almost impossible to tell whether the price violation has occurred. Defendants say they kept books and the information could have been found by examination of their books. Some of it could, of course. The O.P.A. claims that all of the necessary figures could not be assembled even with accountants in defendants' plant to look over their records. At any rate, the defendants were required to furnish the information to the O.P.A. rather than have the Administrator come and get it. A defendant who has thus made it practically impossible for anyone to tell whether he is violating price ceilings or not, by withholding the fundamental information, is not unlikely to violate those ceilings under cover of the darkness which his failure to give information has created. At least it is not unreasonable for one to conclude that such a happening is within the range of probability and to guard against it by injunction.

We think this view is sound and we adopt it. In doing so we quite realize that the question is new, and our path is not clearly marked out by authority. The precise problem with which we are concerned has not been considered by the other circuits. Five cases, arising in four different circuits have dealt with related problems. Bowles v. Sacher, 2 Cir., 1944, 146 F. 2d 186; Bowles v. Town Hall Grill, 1 Cir., 1944, 145 F.2d 680; Bowles v. Montgomery Ward & Co., 7 Cir., 1944, 143 F.2d 38; Bowles v. May Hardwood Co., 6 Cir., 1944, 140 F.2d 914; Henderson v. Burd, 2 Cir., 1943, 133 F.2d 515, 146 A.L.R. 714. In both Bowles v. Sacher and Bowles v. Town Hall Grill, the latest of the circuit cases, the courts affirm a narrow injunction.[8] That, of course, is the converse of our problem. The

---

GMPR (7 F.R. 3153) fixes the maximum at the March 1942 level; if there were no sales during March 1942, the highest price charged by the closest competitor, during that period becomes the ceiling, under section 2(b); if there was no competitor to go by, the maximum is determined by formula based on nearest comparable commodities sold, under section 3; and finally if none of these methods can determine a ceiling, the seller must file application with the O.P.A. for approval of a proposed ceiling price. It is readily apparent that the filing of information applicable to the preceding provisions is the sine qua non for establishing a maximum price. The ceiling can only be determined in one of the specified four ways. Which of these ways is to be used depends entirely on information that the records would have revealed. The requirements as to the kinds of records that must be kept are found in Sec. 11 and 12 of GMPR. See note 1. The Administrator was well within his power in requiring specified kinds of records to be kept. Section 2(a) of Emergency Price Control Act of 1942. See note 2. Nor do defendants controvert this power. Uniformity and ease of administration coupled with inadequacy of ordinary bookkeeping records to indicate the kind of information needed, make the specified records a prerequisite to price control. While the instant case goes on the ground that records and prices are sufficiently closely related in the Express case sense so that "commission in the future [of price violations] unless enjoined may fairly be anticipated from

defendants conduct in the past", this is not the only rationale possible. It clearly indicates, of course, that the District Court was well within its discretion. But the interrelation of records and prices is direct enough here so that proper records may be regarded simply as a means to the end of ceiling price control. It is difficult to doubt that an injunction broad enough to cover the means may also take into account the end served thereby. The powers of equity are flexible not rigid and its essence has been "the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case." Hecht Co. v. Bowles. See note 5.

[8] The Town Hall decision [145 F.2d 681], points out, however, that " * * * as a guide for the decision of future petitions of this sort we think it advisable to indicate that in our view, if the court below had seen fit to grant the broad injunction asked for, we would affirm on the authority of National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 436, 61 S.Ct. 693, 699, 85 L.Ed. 930 * * *." The Sacher decision [146 F.2d 187], avoids direct commitment but expresses a caveat that "This is not to say that an injunction should never be issued broader in scope than the violations actually proved; decision of that question may properly await a case which presents it." The dissenting opinion in the Sacher case is in terms of that very point; the ground of the dissent is that the broad injunction should have been ordered.

other three cases present three levels of our problem, but in a corollary field since in all three cases, there was a price violation to start with, as distinguished from the instant case. In Bowles v. May Hardwood Co., the plea for injunction was dismissed by the district court because a new ceiling higher than the violative price had been set prior to trial; the circuit court reversed and remanded on authority of the Express decision. The Burd case involved a broad decree which the appellate court narrowed on a ground not relevant here—namely, that the violation occurred because of a mistaken conception of relationship between defendants and a manufacturer, and hence was not likely to carry over into fields where the mistake had not occurred.

Bowles v. Montgomery Ward & Co. involved a broad decree which the circuit court affirmed.[9] At best, the light shed by these decisions is indirect. Nor do the many district court decisions [10] bring the problem into brighter focus. The Supreme Court decisions have already been discussed.[11]

In affirming we are not running contrary to decided cases. We conclude we are taking a position on a set of facts not heretofore dealt with by this Court nor any other of the Circuit Courts of Appeals. Every question must have its first decision and if we are otherwise right, are none the worse off for being first.[12]

Affirmed.

[9] It is doubtful whether this decision is of much help as a precedent for us here, however, since it is open to some question whether the broad decree therein was broader than the violations proved. The decree was against the doing of any act in violation of any regulation issued by O.P.A. The defendant had made no effort to comply with the regulation breached and was already under injunction for another regulation violated in the past. This, coupled with a strict view of violative acts because of the court's consciousness of a duty to share in the fight against inflation, led to affirmance.

[10] Bowles v. Luster, D.C.S.D.Cal.1945, 64 F.Supp. 991; Bowles v. Levine,[1] D.C. 1945; Bowles v. Cohen, D.C.E.D.Pa.1944, M.D.N.C. Rockingham Div., March 15, 65 F.Supp. 499; Bowles v. Sportwelt Shoe, Inc.,[1] D.C.Mass.1944; Brown v. Cuyahoga Falls Investment Corp.,[1] D.C. N.D.Ohio 1943; Bowles v. Johnson,[1] D. C.N.D.Ohio, 1943; Brown v. Sacher, D.C. S.D.N.Y.1943, 53 F.Supp. 77; Bowles v. Fischer & Co.,[1] Inc., D.C.S.D.N.Y.1943; Bowles v. Klingstein,[1] D.C.W.D.Va.1938.

[11] The Express decision is, of course, our point of departure. See also note 4. Defendants stress the case of New York, New Haven & Hartford, etc., R. Co. v. I.C.C., 200 U.S. 361, 26 S.Ct. 272, 282, 50 L.Ed. 515. This case is earlier than the Express decision and involves rate contracts and the I.C.C. It only emphasizes the limitation that a violation does not serve as a basis for injunction beyond the reasonable area of threat created. As the Supreme Court there said, "In other words, the proposition is that, by the effect of a judgment against a carrier concerning a specific violation of the act, the carrier ceases to be under the protection of the law of the land, and must thereafter conduct all its business under the jeopardy of punishment for contempt for violating a general injunction." There can be no support for such a proposition. The next sentence of the opinion sums up the view which we share, "To state, the proposition is, we think, to answer it * * *."

[12] The Supreme Court in May Department Stores Company v. N.L.R.B., 326 U.S. —, 66 S.Ct. 203, 211, a decision handed down just as the writing of this opinion was concluded, strengthens the conclusions we have reached. The Hecht case is cited to show equity's control of the scope of injunctive orders. The Express case is relied upon to show the extent of that scope. And in a footnote the opinion says, "A similar situation prevails with respect to the use of injunctions to restrain violations of regulations issued under the Emergency Price Control Act, 56 Stat. 23, 50 U.S. C.A.Appendix § 901 et seq." The Montgomery Ward case is put as an example "Sustaining general injunctions on the basis of particular violations of a regulation." The Town Hall Grill and Sacher cases are also classified as examples "Sustaining limited injunctions." Our particular situation is, we think, blanketed by the sentence: "Injunctions in broad terms are granted even in acts of the widest content, when the court deems them essential to accomplish the purposes of the act."

[1] No opinion for publication.