**UNITED STATES v. ST. REGIS PAPER CO. et al.**

Civ. 74–357.

United States District Court
S. D. New York.
July 24, 1952.

Myles J. Lane, U. S. Atty., New York City, N. Y., (George H. Combs, Jr., Special Asst. U. S. Atty., New York City, N. Y., of counsel), for plaintiff.

LeBoeuf, Lamb & Leiby, New York City, N. Y., for defendants.

WEINFELD, District Judge.

This is an action by the United States of America to enjoin the defendants from violating certain price regulations issued pursuant to the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq., and to recover treble damages for alleged overcharges.

The defendants move to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that (a) there is a failure to join an indispensable party plaintiff and (b) the complaint fails to state a claim upon which relief can be granted; or alternatively (c) for a more definite statement of plaintiff's claim pursuant to Rule 12(e); (d) to strike from the complaint certain allegations as tending to prejudice the fair trial of this action (Rule 12(f)); and finally (e) to direct plaintiff to separately state and number its claims pursuant to Rule 10(b).

■ (a) The defendants' first contention is that the complaint is defective for failure to join the President of the United States as an indispensable party—that the action is improperly brought in the name of the United States of America.

The enforcement provisions of the Defense Production Act of 1950 appear in Section 409 of Title IV, 50 U.S.C.A.Appendix, § 2109. Section 2109(a) provides that "Whenever in the judgment of the President any person has engaged * * * in any acts or practices which constitute * * * a violation" of any regulation, "he may make application" for an injunction. Under Section 2109(c) "the President may institute * * * [an] * * * action on behalf of the United States" to recover overcharges if the buyer fails to institute action within thirty days from the date of the overcharge.

The substance of the enforcement provisions parallels that of the Emergency Price Control Act of 1942, 50 U.S.C.Appendix, § 925(e). However, the latter statute directed that actions both for injunctions and for money damages be brought "on behalf of the United States" by "the Administrator" of the Office of Price Administration rather than the President. The defendants urge that this is a significant change evidencing Congressional intent that actions to enforce the Defense Production Act and to recover damages be instituted only in the name of the President. In my opinion this contention is without substance in view of the structure of the Defense Production Act which in various sections authorizes the delegation of powers by the President.

The 1942 Act expressly provided for an "Office of Price Administration," 50 U.S.C.Appendix, § 921, and constant reference appears throughout to the Administrator who was vested with the powers created by the Act. In contrast, under the Defense Production Act the President is granted broad powers but to be delegated by him to agencies and officials pursuant to Executive Order. Thus, by 50 U.S.C.A.Appendix, § 2103, the President is empowered to create a "new independent agency" to administer price controls and by 50 U.S.C.A.Appendix, § 2153, to "delegate any power or authority conferred upon him by this Act to any officer or agency of the Government, including any new agency * * *." Furthermore, "The President may make such rules, regulations, and orders as he deems necessary or appropriate to carry out the provisions" of the Act. 50 U.S.C.A.Appendix, § 2154.

Pursuant to the foregoing sections, the President, by Executive Order 10161, Section 401(a) thereof, 50 U.S.C.A.Appendix, § 2071 note, created the Economic Stabilization Agency to be headed by an Administrator. Section 401(c) of this Order provides:

"The functions conferred upon the President by Title IV of the Defense Production Act of 1950 are hereby delegated to the Administrator."

As already noted, the enforcement sections authorizing the President to institute injunctive and treble damage actions are found in Title IV of the Act. Since the President, acting under the authority granted by the Act, has delegated these powers, he is not an indispensable party plaintiff in this action.

The question remains whether the United States of America is the proper party plaintiff. Rule 17(a) of the Federal Rules of Civil Procedure provides that "Every action shall be prosecuted in the name of the real party in interest * * *." It has been held that in actions on behalf of the United States brought by the Price Administrator pursuant to the enforcement provisions of the Emergency Price Control Act, 50 U.S.C.Appendix, § 925(e) the real party in interest is the United States. Northwestern Lumber & Shingle Co. v. United States, 10 Cir., 170 F.2d 692; Woods v. Rose, 9 Cir., 171 F.2d 290. See also Fleming v. Goodwin, 8 Cir., 165 F.2d 334, certiorari denied 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. 1755. The fact, which defendants strongly stress, that apparently in all actions brought under the 1942 Act, either for enforcement or treble damages, the party plaintiff was the Administrator, and not the United States of America, is not conclusive of the issue. In United States v. Allied Oil Corp., 341 U.S. 1, 71 S.Ct. 544, 95 L.Ed. 697, the Supreme Court held that an action under the Price Control Act was maintainable in the name of the Government. While it is true that an executive order expressly authorized the Attorney General to institute litigation "in the name of the United States", the Court significantly stated that, even apart from the express grant of authority:

"* * * nothing in § 205(e) [50 U.S.C.Appendix, § 925(e)] prevents the Attorney General, who is customarily charged with representing the Government's interests in court, from following his normal procedure of maintaining enforcement suits in the name of the United States itself. * * * Regardless of captions, the issues in these cases could not change and the real party-in-interest plaintiff has al-

ways been the same." supra, page 5 of 341 U.S., page 546 of 71 S.Ct., 95 L. Ed. 697.

It is here important to note that the Defense Production Act provides that all litigation arising thereunder "shall be under the supervision and control of the Attorney General." 50 U.S.C.A.Appendix, § 2156. It follows from this grant to the Attorney General and from the fact that the Government is the real party in interest that this action is properly brought in the name of the United States.

 (b) The defendants next make a two-pronged attack upon the complaint in that it fails to state a claim either for injunctive relief in equity under Section 409 (a) or at law for recovery of damages under Section 409(c) of the Act. We first consider the alleged deficiency to state a claim for equitable relief. The substance of this attack is that the regulation which the defendants are charged with violating was not in effect and had not been in effect for some time prior to the commencement of this action in April, 1952, and consequently on the latter date they were not engaged in practices which justify the grant of equitable relief by way of injunction.

The complaint alleges the sales of Kraft paper above the ceiling price established in General Price Ceiling Regulation (referred to as GCPR) for the period beginning Jan. 26th, 1951, to date (April 10th, 1952) and sales of commodities and products other than Kraft paper at prices above those permitted by GCPR since April 10th, 1951.

Specifically the defendants are charged with violations in the sales of Kraft paper from April 10th, 1951, to August 23, 1951, in the sum of $175,297.81 and with further violations beyond the latter date, and as to these the plaintiff alleges present inability to state specific amounts "but will offer proof of such amounts at the trial." The defendants are also charged with violations in the sale of commodities other than Kraft paper contrary to GCPR but here too plaintiff alleges it "is presently unable to allege specific amounts for such sales beginning and subsequent to April 10th, 1951, but will

offer proof * * * at the trial." The relief sought is an injunction to restrain the defendants from selling any commodities at over the ceiling prices "under the Regulations as heretofore or hereafter amended, or under any price stabilization regulation hereafter issued which establishes maximum prices for any such commodities."

The sole regulation referred to in the complaint is General Price Ceiling Regulation which was in effect from January 26th, 1951, until October 29th, 1951, and in any event no later than December 19, 1951, by reason of superseding regulations.[1] The date of the last violation specifically alleged in the complaint is August 23rd, 1951. Since thereafter and at the time of the commencement of the action General CPR was no longer applicable to either Kraft paper or any other commodity manufactured or sold by them, the defendants claimed they were not engaged in any acts of violation of said regulation at the time of and for a considerable period prior to the commencement of the action, and there is no basis for the issuance of an injunction.

The purpose of an injunction in an action of this type is not to punish offenses committed in the past but to insure compliance in the future. McComb v. Goldblatt Bros., 7 Cir., 166 F.2d 387. However, the Court has the "broad power to restrain acts which are of the same type * * * as unlawful acts * * * committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." N.L.R.B. v. Express Pub. Co., 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930. Thus, where a price regulation is modified or amended or, as here, superseded by a regulation of similar import, the test is whether the violations proposed to be enjoined "are so inseparably associated with past unlawful acts or so similar to them in character that inevitably there follows an inference that one who commits one series of acts will be likely to commit another of like character." Bowles v. May Hardwood Co., 6 Cir., 140 F.2d 914, 916.

It is conceded that the commodities which defendants are charged with having sold at over the ceiling prices have been and still are subject to price regulations which superseded GCPR. Only the yardstick by which the ceiling price is measured has been adjusted. If price regulations had been completely abolished defendants' position would have merit. To accept their contention would mean mandatory dismissal of every complaint for injunctive relief with each amendment or modification of a ceiling price regulation. Such a result would render sterile the enforcement provisions of the act. See Bowles v. May Hardwood Co., supra, 140 F.2d at page 917. Finally, the complaint is sufficiently broad to encompass violations of the regulations in effect at the time of the commencement of suit. The fact that plaintiff is presently unable to state them precisely does not require dismissal of the action. The defendants through the deposition-discovery procedures may require plaintiff prior to trial to state the precise regulations relied upon to establish the violations.

The next ground for dismissal urged by the defendants is that the complaint is fatally defective for omission to allege that a buyer failed to institute an action within thirty days to recover an overcharge on a sale made in violation of a ceiling price regulation—that such an allegation is a condition precedent to the commencement of the action by the Government. Section 409(c) authorizes the President in the instances of ceiling violations to institute suits when "the buyer either fails to institute an action * * * within thirty days from * * * the occurrence of the violation or is not entitled for any reason to bring the action * * *." 50 U.S.C.A. Appendix, § 2109(c). Undoubtedly it would have been better pleading for plaintiff to have alleged that no such action had been instituted by a buyer within thirty days or that such buyer "is not entitled for any reason to bring the action." However, the allegation that the "government is the sole and proper party plaintiff pursuant to the provisions of Section 409(c)" is sufficient

[1]. Ceiling Price Regulation 22 (CPR 22) and Ceiling Price Regulation 88 (CPR 88).

to overcome the alleged defect. If in fact buyers did institute suit within the statutory period, which would preclude maintenance of the suit by the Government, this may be asserted as a defense.

Dismissal of the complaint is also sought by reason of an amendment to the damages provisions of the Act. As originally enacted, the maximum recovery under Section 409(c) was "the overcharges, plus $10,000." The Section provided:

"the seller shall be liable for * * * such amount not more than three times the amount of the overcharge * * * as the court in its discretion may determine, *but in no event shall such amount exceed the amount of the overcharge, or the overcharges, plus $10,000 * * *.*" (Emphasis added.)

By amendment of July 31st, 1951,[2] the italicized language containing the limitation on damages was removed so that the Act simply provided for an award of "not more than three times the amount of the overcharge * * * as the court in its discretion may determine."

As already noted, the complaint seeks recovery for overcharges for the period April 10th, 1951, to August 23rd, 1951. The defendants contend in substance that with respect to the overcharges occurring prior to July 31st, 1951, plaintiff seeks to give to the amendment, which increased the amount recoverable, a retroactive effect. Both parties have addressed themselves to the constitutionality of the amendment, the Government upholding its effect as retroactive but nevertheless constitutionally permissible, whereas the defendants attack any retroactive application as ex post facto legislation.

In my opinion a proper construction of the amendment does not require consideration of any issue of constitutionality. In neither the statute nor its legislative history is there any indication of retrospective intent. The sole purpose of the amendment appears to have been to equalize the penalty provision by removing the maximum recovery as "the overcharge plus $10,000" which favored the "large scale operated."[3] Under the general rule that a statute is presumed to operate prospectively in the absence of clear expression to the contrary, Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858, it is clear that the removal of the statutory maximum applies only to violations committed after the effective date of the amendment, July 31st, 1951, and by reason of the general saving statute, 1 U.S.C. § 109, all liabilities incurred prior to that date are preserved.

The complaint states that the amounts received by the defendants "from April 10th to August 23rd, 1951, exceeded applicable prices by not less than $175,297.81," thus combining in one allegation claims for damages arising both prior and subsequent to the amendment. Judgment is demanded for thrice this amount of the alleged overcharge. However, the fact that the prayer for relief does not earmark the amount claimed for violations committed prior to the amendment does not require the dismissal of the complaint. The allegations of damages do not determine the sufficiency of a pleading since the "demand for judgment is not considered part of a cause of action." 2 Moore's Federal Practice; Second Edition, p. 1669–1670; Ring v. Spina, 2 Cir., 148 F.2d 647, 160 A.L.R. 371; Falk v. Levine, D.C., 60 F.Supp. 660. The computation of damages will be made by the Trial Court. In this instance, too, defendant by means of deposition-discovery procedure may ascertain the precise dates of the various alleged violations.

The motion to dismiss the complaint upon the various enumerated grounds is denied.

(c) We next consider the balance of defendant's motions directed towards the complaint. The defendant urges that because of the allegations which refer to "the commodity Kraft paper," to "commodities and products, other than Kraft paper," as well as to "commodities sold by these de-

2. Act of July 31, 1951, 82nd Congress, 1st Session, Sec. 104(j), 65 Stat. 136.

3. House Report 639, 82nd Congress, 1st Session, 1951; Senate Report 470, 82nd Congress, 1st Session, 1951; Supplementary Statement of views of Senators Douglas, Benton and Moody on Proposals to strengthen the Defense Production Act.

fendants" and the claim that sales were made in violation of GCPR, "the regulations" and "the applicable price ceilings," the complaint is vague and ambiguous. I think this claim is without merit and that defendant is in a position to frame a responsive pleading. The detailed information which defendant seeks in its notice of motion under guise of requiring plaintiff to serve a more definite statement of its claim is readily ascertainable through means of interrogatories or deposition before trial.

■ (d) The motion to strike the allegations of the complaint that despite repeated warnings the defendants continued to sell in excess of ceiling prices on the ground it may tend to prejudice defendants upon the trial is denied. Proof in support of this charge may show wilfulness and justify the imposition of treble damages.

■ (e) The motion under Rule 10(b) is also denied. Separate sales constituting repeated violations need not be separately stated in the complaint. As in other instances the information is readily ascertainable by defendant upon using the methods provided by Rules 26–34 inclusive.

Settle order on notice.