### NATIONAL LABOR RELATIONS BOARD v. AMERICAN ROLLING MILL CO.
#### No. 8942.

Circuit Court of Appeals, Sixth Circuit.
March 2, 1942.

ployee Representation or the formation and administration of any other labor organization of its employees, and from contributing financial or other support to that or any other labor organization of its employees; (b) in any other manner interfering with, restraining or coercing its employees in the exercise of the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives chosen by them, and to engage in concerted activities for purposes of collective bargaining or other mutual aid or protection. The Board also ordered the following affirmative action:

(a) The withdrawal of all recognition from the Zanesville Armco Plan of Employee Representation as the bargaining agent of any of its employees for the purpose of dealing with respondent as to labor disputes, wages, rates of pay, hours of employment or conditions of employment or any other grievances and to completely disestablish Zanesville Armco Plan of Employee Representation as such representative;

(b) To post immediately appropriate notices.

Respondent is an Ohio corporation with its principal place of business at Middletown, Ohio and is engaged in the manufacture and sale of steel sheets at its Zanesville, Ohio, plant, the one here involved.

In August 1923, respondent established at its Zanesville plant the Armco Advisory Committee, which were elected by employees in each department. They had no administrative, executive or legislative functions, but acted as mediums by which respondent's employees could express their views to and ask questions of petitioner's managers and make suggestions for the improvement of its business and working conditions.

When the National Industrial Recovery Act became effective in June 1933, and the Amalgamated Association of Iron, Steel and Tin Workers of North America, an affiliate of the American Federation of Labor, made an attempt to organize respondent's employees, the manager of petitioner's business called a meeting of the Advisory Committee Chairman and suggested that a vote be taken among all of respondent's employees as to whether this committee was satisfactory to them as a method of exercising their rights under the Act. On June 29th and 30th, 1933, the employees voted

Philip G. Phillips, of Cincinnati, Ohio (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, Frederick M. Davenport, Jr., and Stanley D. Metzger, all of Washington, D. C., on the brief), for petitioner.

Cornelius J. Petzhold, of Cincinnati, Ohio (Frost & Jacobs, of Cincinnati, Ohio, Meyer, Johnson & Kincaid, of Zanesville, Ohio, and Carl M. Jacobs and Cornelius J. Petzhold, both of Cincinnati, Ohio, on the brief), for respondent.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding to enforce an order of the National Labor Relations Board against respondent, pursuant to Section 10(c) of the National Labor Relations Act, Act of July 5, 1935, c. 372, 49 Stat, 449, 29 U.S.C.A. § 151 et seq. The order directed respondent to cease and desist from (a) dominating or interfering with the administration of Zanesville Armco Plan of Em-

secretly on respondent's premises, 484 of those participating voting to discontinue the committees and 182 voting contrary.

On July 14, 1933, the Advisory Committees called a mass meeting of respondent's employees at the local high school in Zanesville and respondent closed its plant so that its employees might attend. A member of the committees invited respondent's manager to attend the meeting and discuss the National Industrial Recovery Act. Theretofore an organizer for the Amalgamated Association had told some of respondent's employees that they must join his organization if they wished to get any benefits under the Act. The manager in his address told the employees that none of them was required to join any organization but that each was free to make his own choice. He also told them that since they had theretofore abolished the Armco Advisory Committees, he hoped they would form some other Association with which respondent could do business, and that respondent could not operate without some form of employee representation. The manager left the meeting at the conclusion of his address and the general discussion which followed became disorderly and he was recalled, when he again urged the employees to devise some plan of organization, or work out some form of employee agreement. As a result of this meeting, beginning July 17th to and including July 20th, 1933, primary and final elections were held on respondent's premises by its employees for the election of temporary departmental representatives. Respondent published notices of these elections on its bulletin board and also canvassed its employees for suggestions for a plan of employee representation which would be mutually satisfactory to all concerned.

On July 18, 1933, respondent printed the suggestions it had received and distributed them among its employees. The elections resulted in the selection of a committee of eight employees who were authorized to meet with respondent's managerial officers for the purpose of working out a plan of employee representation under the National Industrial Recovery Act. The Committee met with respondent's manager on July 21, 1933, who furnished each member of the committee with a printed copy of a plan designated "Proposed Armco Plan of Employee Representation" which combined suggestions received from various employees and also contained in part plans for employee representation in existence in other companies. The meeting adjourned to July 25, 1933, at which time the committee met on respondent's premises and there discussed the plan considered at the July 21st meeting and also a plan of the Amalgamated Association. A vote of four to three was taken on the latter plan, the chairman not voting, but he later voted in the negative, resulting in a tie. The committee then adjourned to July 27, 1933. On this date it reconvened on respondent's premises and the plan of July 21st was submitted to a vote and adopted five to one. A member of the committee, who was also a member of the Amalgamated and present, declined to vote. Subsequently, at the same meeting respondent's manager was invited to attend and came with an assistant, both of whom made suggestions as to the plan and also about the future work of the committee.

From July 28th to and including August 3d, 1933, the employees of respondent on its premises, by secret ballot, selected 27 employee representatives to serve as a temporary committee in accordance with the plan. Respondent had copies of the plan printed and on November 11, 1933, the committee theretofore elected, distributed copies to respondent's employees. On the copies was a recommendation from the committee that the plan be adopted and also a statement from respondent's manager that the plan was acceptable to it. On December 7th, 8th, and 9th, using secret ballots furnished by respondents, its employees adopted the plan by a vote of 348 to 172.

On December 14th and 15th again on respondent's premises and by secret ballots provided by it, the employees elected a slate of Employee Representatives from among the nominees to serve under the Plan for 1934. These representatives were listed by departments in a printed pamphlet containing the Plan which was issued and distributed to all of respondent's employees. This Plan has since continued in full force and effect without change.

The Plan in its preamble recites that the management and employees agree to it in order to provide effective means of contact between employees and management on all questions regarding the conditions and provisions of their employment. It is also stated that the purpose of the Plan is to carry into effect the provisions of Section 7(a) and (b) of the National

Industrial Recovery Act, 48 Stat. 198, which provided in part that employees should have the right to organize and bargain collectively through representatives of their own choosing and be free from the interference, restraint or coercion of the employer.

In ten enumerated sections, the Plan provides in detail for employee electoral representation and districting within the plant and also for qualifications of representatives and voters, while guaranteeing against abridgment of the right of employees to belong or not to belong to any union or other organization, for the procedure of nominating and electing representatives with assistance from the management if requested, for terms of office and the manner of filling vacancies. It also provides for various employees' committees, management representatives, and joint committees of the two groups.

The employer representatives are appointed by the manager and are required to respond promptly to all requests from employee representatives and to grant interviews freely to any of them from time to time, collectively or separately with reference to matters of concern to the employees. The number of representatives for the respective sides may be equal but that of the management may be less than that of the employees and in no case, more. Power to employ, power to suspend and power to discharge for cause is reserved exclusively to the employer. Separate meetings of employee representatives are provided and also joint meetings with the management. The joint committee meetings may be held during regular working hours without any deductions from the pay of employee representatives. Such meetings are presided over by a management representative who shall keep and supply copies of the minutes of the meetings to each member. Upon request, the employer is to provide at its own expense, a suitable meeting place for all groups and committees and to indemnify each employee representative at his usual pay for time spent in attending meetings.

The adjustment of grievances is a six-step process from the employees' foreman to arbitration. However, the Works Manager, during this process, may refer the controversy to one of the joint committees and if satisfaction is not obtained, the employee may notify the President of the Company. Finally, if the President and Employee Executive Committee agree thereto, the matter shall be referred to one or more arbitrators selected by mutual agreement. The Plan shall remain in effect during the existence of the National Industrial Recovery Act and thereafter may be terminated at any time upon three-months' notice by the management or by a majority of the employees of the Division voting thereon. Under the Plan, there is no provision for the payment of dues or other expenses by employees and no provision is made for the holding of employee meetings.

. It was expressly provided in the Plan that it should not abridge or conflict with the employees' right to join or belong to any union or other organization and that the Plan could be amended at any time by a secret ballot of two-thirds of the employees of the division voting thereon, the management concurring.

The questions for decision are (1) whether the foregoing collective agreement in existence at the time the National Labor Relations Act became effective may be declared inoperative under the terms of the Act and (2) whether there is substantial evidence to support the Board's findings that respondent, by reason of its connection with the plan in question, interfered with, restrained, or coerced its employees in the exercise of their organizational rights as defined in the Statute.

The answer to the first question is plainly found in the Act where it is said, in referring to the Board's power to prevent unfair labor practices, "This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." Title 29 U.S.C.A. § 160(a), 49 Stat. 453, c. 372.

Section 8(1) of the National Labor Relations Act, 49 Stat. 452, 29 U.S.C.A. § 158(1) defines an unfair labor practice to exist when the employer interferes with, restrains or coerces employees in their right of collective action. The essence of collective bargaining is the freedom of choice of the employees in the selection of their bargaining representative. If a collective agreement was in existence at the time the Act became effective and the performance of such contract had a tendency to interfere with the freedom of choice of the employees in the selection of

their bargaining agent or if such contract had a tendency to interfere with the free bargaining process, such a contract would be terminated by the provisions of the Act.

 In the present case, the Board had the right to consider respondent's personal interest in the execution and performance of the contract and if viewing its terms through the telescope of the National Labor Relations Act, the Board could draw the inference that its execution and performance interfered with or influenced respondent's employees in the exercise of their right of self organization guraranteed under the Act, the Board had the power to require its discontinuance. Notwithstanding the contract when made complied with the National Industrial Recovery Act, the Board could require the parties to make a fresh start, because the National Labor Relations Act amplified and extended collective bargaining beyond the concept of the earlier Act.

Under the terms of the present agreement the employer is required to bear the expenses of the operation of the plan and the committee members receive from the employer their usual pay while attending meetings.

It is a fair inference that but for the financial support of the employer in meeting the expenses of the organization, it would rapidly disintegrate. Usually favors claim their reward and the respondent has shown a beneficent attitude toward the Plan, both in its creation and execution. Such a situation is not conducive to independent action. In our opinion, the order of the Board is supported by substantial evidence. Cf. National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 460, 60 S.Ct. 307, 84 L.Ed. 396; Consolidated Edison Company v. National Labor Relations Board, 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 270, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307.

Paragraph 1(b) of the order by which the Board, on the basis of the collective agreement in question, ordered respondent to desist from "in any other manner interfering with, restraining or coercing employees * * *" is not supported by the evidence. National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 434, 61 S.Ct. 693, 85 L.Ed. 930.

Paragraph 2(b) of the order by which the Board required the posting of appropriate notices should be so amended as to have added to the end of the paragraph the following: "but that the employees are free to organize or join any union they choose whether affiliated with a national union or one without any affiliation." Westinghouse Electric & Mfg. Co. v. National Labor Relations Board, 2 Cir., 112 F.2d 657, affirmed per curiam in 312 U.S. 660, 61 S.Ct. 736, 85 L.Ed. 1108.

A decree enforcing the order of the Board as amended will be entered.