**NATIONAL LABOR RELATIONS
BOARD**

v.

**SHARPLES CHEMICALS, Inc.**

**No. 11838.**

United States Court of Appeals
Sixth Circuit.
Jan. 27, 1954.

Fannie M. Boyls, Washington, D. C., George J. Bott, David P. Findling, A. Norman Somers, Franklin C. Milliken, Washington, D. C., on brief, for petitioner.

Frank E. Cooper, Detroit, Mich., Beaumont, Smith & Harris, Detroit, Mich., on brief, for respondent.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order issued July 8, 1952 against the respondent, Sharples Chemicals, Incorporated, pursuant to § 10(e) of the Labor Relations Act, §§ 141–168, Title 29 U.S.C.A.

The respondent, a Delaware corporation, manufactures various chemical products at its plant in Riverview, Michigan. It is conceded that it is engaged in commerce within the meaning of the Act. The charge upon which the complaint was issued was filed October 18, 1950 by United Gas, Coke and Chemical Workers of America, CIO, a labor organization within the meaning of § 2(5) of the Act.

The complaint alleges that the respondent continuously since 1941 has dominated and interfered with the administration of a labor organization and has contributed financial and other support to said organization, thus engaging in unfair labor practices within the meaning of § 8(a) (2) of the Act, and has interfered with its employees' right of self-organization and collective bargaining through representatives of their own choosing, thus engaging in unfair labor practices within the meaning of § 8(a) (1) of the Act. The respondent by its answer denied the commission of any unfair labor practices, and also put in issue the question of the charging union's compliance with § 9(f) of the Act.

The Board's findings of fact can be summarized as follows: No outside labor organization has ever represented the respondent's employees. Instead there have been in existence several organizations, one known as the Employee Representative Group, hereinafter referred to as the Group, and five others, known as the Election Committee, the Grievance Committee, the Job Evaluation Committee, the Clothing Committee, and the Benefit Fund Committee, which functioned in the ways hereinafter described and which are the labor organizations referred to in the complaint whose administration has been dominated and interfered with by respondent.

Prior to 1942, respondent's plant manager customarily met with employees individually or in small groups to discuss matters affecting their working conditions. The rapid expansion of respondent's business resulting from World War 2 made it difficult to follow this custom, and, about the early part of 1942, the Employee Representative Group Plan was put into effect, by which representatives selected by employees would regularly meet with the Management. One object of the group meetings was to serve as "a two-way street for communication between Management and the people in the plant." The plant manager presided and the personnel manager acted as secretary. Foremen and other supervisory employees were excluded. The Group was made up of one representative for every fifteen employees in a designated unit, elected by the employees in their respective units for a term of one year. This totaled 34 representatives in the group. A wide variety of subjects were discussed at the meetings which were held usually once a month at the plant. The subjects included wages, vacation

pay, work schedules, overtime, pension plans and hospitalization insurance. The plant manager or the personnel manager either disposed of these matters at the meeting at which they were raised or took them under advisement and announced their decision at a later meeting.

The Election Committee consisted of five members of the Group, appointed by the plant manager as Group chairman with the approval of the Group Representatives. The Committee conducted the elections of employee representatives of the Group and members of the standing committees. The elections were conducted on company premises with the respondent supplying the Committee with the necessary ballots, ballot boxes, and eligibility lists of candidates. The Committee has not conducted any elections since April 1950.

The Grievance Committee was composed of three employee members, each representing a different department. An employee was required to have at least three years' service to be eligible. In the 1950 election the procedure was for the employees in the department involved to elect their own committeemen. The Committee took up complaint or disagreements affecting the relations of the Company with its employees where the aggrieved employee was unable to settle his grievance with his foreman. After investigating the grievance, the Committee might attempt to adjust it with the personnel manager and if unsuccessful proceed with it to higher levels of management. Since April 1950 the Committee made recommendations to the personnel manager in three separate complaints, all three of which the personnel manager accepted.

The Job Evaluation Committee evaluated new jobs and revised old evaluations that were questioned by hourly-rated employees or management. It consisted of four employees, elected by the employees of different departments, and four representatives of Management. It was necessary for the employee to have at least six months of service with the Company in order to be eligible. Each member evaluated the job by assigning point values to five specified factors with the final determination being made by averaging the recommendations of all the members. Its decisions were final.

The Clothing Committee passed upon requests of hourly-rated, as well as of salaried and supervisory, employees for protective clothing. It consisted of four employee members elected by their respective departments for one year terms. An employee must have been in the respondent's employ for at least six months in order to be eligible. The respondent complied with the Committee's decision.

The Benefit Fund Committee administered the benefit fund which was established to furnish financial assistance to needy employees. It was composed of five members elected by employee representatives for one year terms. Membership was limited to employees with six months' service with the respondent. Membership in the fund was open to all employees upon application and payment of a fifty cent membership fee. The fund was maintained principally by the respondent's monthly contributions of $160 and by earnings from vending machines in the plant, averaging between $140 and $150 per month. Benefits were paid by check issued by the respondent's office supervisor upon written request of the Committee after the latter's approval of an application for benefits.

In all the organizations above referred to the representatives or committee members were paid for their time spent at the meetings, even when the meetings were held outside their regular hours, and membership in the group or of any committee depended upon the employee's continued employment by the Company.

The Board ruled that the effect of the Group and the Committees was that of a single employee representation plan whereby employees through their representatives were afforded a means of securing from the respondent satisfaction of their grievances and improvement of their working conditions, and as such

the Group and the Committees were the type of labor organizations contemplated by the Act, and that the respondent had dominated and interfered with the administration of the Group and the Committees, and had interfered with the exercise by its employees of the right of collective bargaining, in violation of §§ 8(a) (2) and 8(a) (1) of the Act. By its order of July 8, 1952, it directed that the respondent cease and desist from such domination or interference, and from recognizing or dealing with the Group and the Committees, or any successors thereto, as the representative of any of its employees in its labor relations problems; that it completely disestablish said organizations as the representatives of any of its employees for the purpose of dealing with the respondent concerning conditions of employment; and that it post appropriate notices to that effect.

The respondent contends that the Board improperly received and considered incompetent evidence, that its findings are not supported by substantial evidence, that in making its findings it failed to comply with the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., that the Group and the Committees were not labor organizations within the meaning of the National Labor Relations Act, and that, in any event, there was no domination or interference by the respondent with the administration of said organizations or with the right of the employees to bargain collectively through representatives of their own choosing.

A preliminary matter for decision is the issue, raised by the respondent's answer to the complaint, whether the charging Union was in compliance with the filing requirements of § 9(f) of the Act, which provides that no complaint shall be issued pursuant to a charge made by a labor organization unless such organization shall have filed with the Secretary of Labor a report giving certain information about the organization, including a financial statement. Respondent contends that the Board should be required to meet this issue and make

a showing on the record as to whether or not the charging Union was in compliance before proceeding with the case. The trial examiner overruled the objection. The Board approved this ruling on the ground that the fact of compliance by a labor organization was a matter for administrative determination, was not litigable by the parties, and that "the Board is administratively satisfied that both the charging Union and its parent organization have been in compliance at all times material herein." Respondent urges upon us as a ground for denying enforcement the refusal of the Board to consider this issue at the time of the hearing, and its failure to make a showing on the record that the charging Union was in compliance.

Sections 9(f) and (g) of the Act deal with the filing of reports with the Secretary of Labor, while § 9(h) of the Act provides that no complaint shall be issued pursuant to a charge made by a labor organization unless there is on file with the Board non-Communist affidavits by the officers of the labor organization. Petitioner points out that technically respondent's answer raises an issue only with respect to § 9(f) of the Act, and that the question of the filing of non-Communist affidavits is not involved. However, in respondent's exceptions to the trial examiner's intermediate report it took exception to the failure of the report to make findings on certain issues and submitted proposed findings of fact and conclusions of law for consideration by the Board, in both of which it raised the question of compliance with the requirements of §§ 9(f), 9(g) and 9(h) of the Act. Questions of compliance, whether under § 9(f) or 9(h) of the Act, present similar legal issues and we will treat compliance under both sections as having been raised in this proceeding.

█ In some of the cases heretofore considered by the various Courts of Appeals it was contended that compliance with these sections of the Act was jurisdictional and that the complaint should be dismissed if it did not allege the fact of compliance as a necessary jurisdic-

tional allegation. Despite some possible earlier doubt about this issue, we are of the opinion that it is now well settled that compliance under the statutory provisions is not jurisdictional, and that it is not necessary that the complaint contain allegations of compliance. N. L. R. B. v. Wiltse, 6 Cir., 188 F.2d 917, certiorari denied 342 U.S. 859, 72 S.Ct. 87, 96 L.Ed. 647; N. L. R. B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927, 929; N. L. R. B. v. I. F. Sales Co., 6 Cir., 188 F.2d 931; N. L. R. B. v. Michalik, 6 Cir., 201 F.2d 48; N. L. R. B. v. Greensboro Coca-Cola Bottling Co., 4 Cir., 180 F.2d 840, 844-845; N. L. R. B. v. Red Rock Co., 5 Cir., 187 F.2d 76, 77-78, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Law & Son v. N. L. R. B., 10 Cir., 192 F.2d 236, 239. This, of course, does not mean that compliance is not necessary in order for the Board to proceed. Compliance is necessary and failure to comply is a statutory bar to the proceedings. N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969. But similar to cases involving the Statute of Frauds or the Statute of Limitations such a statutory bar is a matter of defense, not a question of jurisdiction. See N. L. R. B. v. Greensboro Coca-Cola Bottling Co., supra, 180 F.2d at page 845.

Respondent contends that although compliance is not jurisdictional, yet, since failure to comply is a bar to the proceedings, N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U.S. 322, 71 S.Ct. 758, when the respondent raised the issue of compliance before the Board it was necessary that the Board make a showing of compliance on the record before it was authorized to proceed with the hearing. Our previous rulings have not considered this precise question. In both N. L. R. B. v. Wiltse, supra, and N. L. R. B. v. Vulcan Forging Co., supra, from this Court, the question of compliance was not raised before the Board. In N. L. R. B. v. I. F. Sales Co., supra, and N. L. R. B. v. Michalik, supra, also from this Court, we followed our earlier rulings without discussion of the question of where or how the issue of compliance had been raised. The question was referred to but not answered by the Supreme Court in N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U.S. at page 325, 71 S.Ct. 758.

One answer to this contention is that the record contains a showing of compliance. The charge carries the notation: "Compliance Status Checked by: D. H." The Board stated in its decision and order that it was "administratively satisfied that both the charging Union and its parent organization have been in compliance at all times material herein." However, we construe respondent's contention as meaning that such a general finding is merely a conclusion and that no evidence was introduced at the hearing before the Board on which such a conclusion could be based.

Sections 9(f) (g) and (h) of the Act contain no provision about how or by whom the question of compliance is to be determined. The Board has set up administrative procedure to satisfy itself that a charging union has complied. See N. L. R. B. v. Greensboro Coca-Cola Bottling Co., supra, 180 F.2d 840, 844, Note 1. However, it has been recently held that where the required documents have been executed and properly filed by the union officers, the Board has no authority under the Act to deprive the union of its compliance status. Farmer, Chairman v. United Electrical, Radio & Machine Workers of America, D.C.Cir.1953, 211 F.2d 36. If we adopted this construction of the Act it would dispose of this phase of the case. But in view of the apparent recognition, both by the Courts and by Congress, of the existence of and authority for such administrative procedure; N. L. R. B. v. Greensboro Coca-Cola Bottling Co., supra; N. L. R. B. v. Red Rock Co., supra; Law v. N. L. R. B., supra; See also N. L. R. B. v. Highland Park Mfg. Co., supra, 341 U.S. at page 325, 71 S.Ct. 758; we prefer to base our ruling on the broader ground of recognizing the authority of such administrative procedure

on the part of the Board and determining whether its administrative finding of compliance can be litigated before the Board in an unfair labor practice proceeding under § 10(b) of the Act, § 160(b), Title 29 U.S.C.A.

■■■ There is nothing in the Act requiring the Board to hold a judicial hearing on the question of compliance. Rather, the effect of the Act is to make its provisions effective and available to a union upon the occurrence of a certain event and it becomes the duty of the Board to determine whether that event has occurred. Congress may delegate the power to find or determine some fact or situation on which the operation of a law is conditioned. Varney v. Warehime, 6 Cir., 147 F.2d 238, 244; Miller v. Mayor, etc., of City of New York, 109 U.S. 385, 393–394, 3 S.Ct. 228, 27 L.Ed. 971; See St. Louis Merchants' Bridge T. Ry. Co. v. United States, 8 Cir., 188 F. 191, 195. Any action taken by the Board in this respect is in the nature of an investigation, rather than a hearing and can be conducted on an ex parte basis. Bowles v. Baer, 7 Cir., 142 F.2d 787; Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 169 F.2d 281, 285–287; Woolley v. United States, 9 Cir., 97 F.2d 258, 262. Such an administrative determination does not go to the merits of the controversy and can be properly done on a union-to-union basis in a proceeding which is entirely separate and independent from any particular unfair labor practice proceeding, as has been the practice of the Board. The factual determination of this question will thus be applicable to all unfair labor practice proceedings in which a particular union is involved with different respondents.

■■■ In N. L. R. B. v. Wiltse, supra, we discussed some of the legislative history of the Act which showed the intent of Congress to prevent litigation of compliance questions in the Board hearings. As pointed out in that opinion, the Report of the Joint Committee on Labor-Management Relations created by the Labor-Management Relations Act contained this statement with reference to the filing of the required non-Communist affidavits: "If the parties to Board hearings are permitted to question the veracity of the affidavit, or the fact as to it having been filed, records will be hopelessly overburdened with such proof. Board hearings must be confined to evidence going into merits of the case at hand if the Board is to carry out its real function of deciding unfair labor practice cases and determining bargaining representatives." With respect to the verity of the non-Communist affidavits, § 9(h) of the Act provides that the provisions of § 1001, Title 18 U.S.Code, shall be applicable to such affidavits. This section provides criminal penalties for wilfully making a false or fraudulent affidavit. The Department of Justice has proceeded to enforce this provision of the Act. See United States v. Valenti, D.C.N.J., 106 F.Supp. 121. In our opinion, Congress considered this more suitable for an efficient administration of the Act than would be the case if the verity of the affidavits could be questioned or litigated before the Board. The type of problem involved and the history of the statute do not indicate any intention on the part of Congress to permit the respondent in an unfair labor practice proceeding to raise and litigate in that proceeding the question of compliance on the part of the charging union. See N. L. R. B. v. Greensboro Coca-Cola Bottling Co., supra; and N. L. R. B. v. Red Rock, supra, in both of which cases the respondent raised the question of compliance by a pleading before the Board. If the practical operation of the statute and the enforcement of it, as so construed, does not prove practical or successful, Congress is free to change it at any time. Switchmen's Union v. National Mediation Board, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61. Such legislation does not create vested rights. N. L. R. B. v. Edward G. Budd Mfg. Co., 6 Cir., 169 F.2d 571, 577.

■■ With respect to the merits of the controversy, we are of the opinion that

the case is controlled by our earlier ruling in N. L. R. B. v. General Shoe Corp., 6 Cir., 192 F.2d 504, certiorari denied 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323, where the question is discussed. The effect of the various committees was that of a single employee representation plan dealing with all matters normally the subject of collective bargaining, and afforded the employees a means of securing from the respondent satisfaction of their grievances and improvement of their working conditions. The Group and the Committees thus constituted a "labor organization" within the purview of § 2(5) of the Act, § 152(5), Title 29 U.S.C.A. The claimed factual differences between the two cases, relied upon by respondent, are not sufficient to differentiate the underlying principle.

▮ The Board's finding of company domination and interference is amply supported by substantial evidence on the record considered as a whole. In addition to employer participation and the power to remove an employee representative by transferring him to another department, the participating employees were paid by the respondent for their time so spent, whether during or after working hours, and financial and other support was contributed by the respondent. N. L. R. B. v. American Rolling Mill Co., 6 Cir., 126 F.2d 38; American Enka Corp. v. N. L. R. B., 4 Cir., 119 F.2d 60, 62.

▮ We find no merit in respondent's objection to that portion of the order which required it to withdraw all recognition from the Group and the Committees as the representatives of any of its employees for the purpose of dealing with the respondent about grievances or conditions of employment and to completely disestablish said organizations as such representatives. The disestablishment of a company dominated employee organization may be necessary to completely dissipate the former relationship. The test of whether an employee organization is employer controlled is not an objective one but rather subjective from the standpoint of the employees. The complete disestablishment of the organizations was within the discretionary power of the Board. N. L. R. B. v. Newport News, etc., Co., 308 U.S. 241, 250–251, 60 S.Ct. 203, 84 L.Ed. 219; N. L. R. B. v. Southern Bell Tel. & Tel. Co., 319 U.S. 50, 60, 63 S.Ct. 905, 87 L.Ed. 1250; N. L. R. B. v. Tappan Stove Co., 6 Cir., 174 F.2d 1007, 1013–1014.

▮ Respondent contends that the Board failed to comply with the provisions of § 8(b) of the Administrative Procedure Act, which requires the agency to show its ruling on each proposed finding and to include in the record a statement of the reasons and basis for its decision on all material issues presented. Section 1007(b), Title 5 U.S.C.A. The respondent offered 53 proposed findings, of which the Board accepted 20. It rejected the remaining proposed findings "because they are, in whole or in part, contrary to the facts or the law or because they are immaterial." Such a statement indicated the Board's ruling with respect to its adoption or rejection of all 53 of the proposed findings, and we see no objection to including all 53 rulings in one sentence instead of 53 separate sentences. Respondent contends, however, that such a statement is too general with respect to the reason for each ruling, and that this Court is not able to tell in this procedure whether a certain proposed finding was rejected because it was immaterial or not established by the evidence. It strongly contends that the Board was not justified in ruling that many of the findings were immaterial. Whether the proposed finding is immaterial or not goes to the merits of the ruling. Whether right or wrong in the ruling, the Board gave its reason as required by the Act. Findings on immaterial issues are not required. Cf. N. L. R. B. v. Newport News etc. Co., supra, 308 U.S. at page 247, 60 S.Ct. 203. The Board was not limited to relying upon one reason. The Board takes its chances on having a ruling reversed

because it has failed to explain its reason sufficiently, or the reason may be so general and all embracing as to justify the Court in reversing the ruling for lack of a specific reason, but in the present case, considering the findings eventually made by the Board, the issues involved, and the detailed nature of the proposed findings which were rejected by the Board, we are of the view that the Board indicated to us its reason for each ruling with enough particularity to enable us to satisfactorily review it. N. L. R. B. v. State Center Warehouse & C. S. Co., 9 Cir., 193 F.2d 156, 158; Chicago & E. I. R. Co. v. United States, D.C., 107 F.Supp. 118, 125, affirmed 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707; Capital Transit Co. v. United States, D.C., 97 F.Supp. 614; Cf. N. L. R. B. v. Texas Mining & Smelting Co., 5 Cir., 117 F.2d 86, 87.

■ Section 10(b) of the Act, § 160(b), Title 29 U.S.C.A. provides that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board, and that any proceeding shall so far as practicable be conducted in accordance with the rules of evidence applicable in the district courts of the United States. The charge was filed October 18, 1950. The Board and the respondent agree that the proceedings were accordingly limited to unfair labor practices occurring on and after April 20, 1950. Respondent contends that much evidence was received by the Board with respect to events prior to that time indicating the organization and functioning of the Group and the Committees prior to April 20, 1950, without independent evidence that the Group and the Committees were so organized and were so functioning after that date. The trial examiner in receiving such evidence ruled that it would be received and considered only as background, which ruling the Board sustained. The ruling is approved. N. L. R. B. v. General Shoe Corp., supra, 192 F.2d at page 507. The original inception of the different organizations, together with the testimony that they were still functioning, without much attempt on the part of respondent to show any basic change, had a material bearing upon the question of how they were functioning on and after April 20, 1950.

At the request of counsel for the Board, the respondent made available to the Board office files of various executive employees, and copies of various records and documents. Many of these were received in evidence over objections of respondent, who contends they were not identified by anyone who compiled them, constituted hearsay testimony, did not correctly reflect the true facts about the Group and the Committees, and, in any event, referred to conditions prior to 1950.

■ Insofar as the "Minutes" of the meetings of the Employee Representative Group are concerned, we think they were sufficiently identified as "Minutes" of the meetings by the testimony of the Manager of Personnel Relations, who testified that he was present at the meetings and that they were written as minutes during the progress of the meeting and thereafter posted on the 13 bulletin boards throughout the plant. The Board was justified in rejecting respondent's contention that they were merely interoffice communications instead of "Minutes" and receiving them in evidence as records made in the regular course of business under Sec. 1732, Title 28 U.S. Code. Landay v. United States, 6 Cir., 108 F.2d 698, 704–705; Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680, 682–683, certiorari denied 323 U.S. 769, 65 S.Ct. 121, 89 L.Ed. 615, rehearing denied 323 U.S. 817, 65 S.Ct. 276, 89 L.Ed. 649.

■ We agree with respondent's contention that much of the remaining documentary evidence, such as copies of purported "constitutions" or "by-laws" of various committees were not admissible in accordance with the rules of evidence applicable in the District Courts. § 160(b), Title 29 U.S.C.A. The existence of a document or its

presence in the files of a corporation does not, without more, render it admissible. United States v. Smart, 5 Cir., 87 F.2d 1, 2. § 1732, Title 28 U.S. Code, has greatly liberalized the strictness of the early shop book rule, but it was not intended by that legislation to open wide the door to any documents found among the papers and files of a corporation. The basis of the liberalized rule was the probability of trustworthiness of records because they were routine reflections of the operations of the business. The character of the records was the earmark of their reliability. Palmer v. Hoffman, 318 U.S. 109, 113–115, 63 S.Ct. 477, 87 L.Ed. 645. To be admissible under the statute certain qualifications must be met, such as being identified as corporate records and the manner in which they were prepared. United States v. Smart, supra; John Irving Shoe Co. v. Dugan, 1 Cir., 93 F.2d 711, 713. In the present case these qualifications were not met. Petitioner relied almost entirely upon the fact that the documents in question were produced by the respondent in response to a subpoena duces tecum, without satisfactory proof of who drafted them or of their authenticity. The Labor Management Relations Act of 1947 and the Administrative Procedure Act did not make such hearsay evidence admissible. Pittsburgh S. S. Co. v. N. L. R. B., 6 Cir., 180 F.2d 731, 733. But most of it was background evidence pertaining to the creation and functioning of the Group and Committees when they were originally set up, the general nature of which was also given to the Board by the testimony of management officials who participated in it and employees who served as members of the various organizations. Under such circumstances, we do not consider it prejudicial error. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 200 F.2d 148, 150; Cf. Willapoint Oysters v. Ewing, 9 Cir., 174 F.2d 676, 690–691. Although some of the details of the organization and functioning of the Group and the Committees as found by the Board are drawn from

these documents, we are of the opinion that the testimony of the witnesses above referred to, together with the absence of any material dispute about the facts covered by this testimony introduced by both petitioner and respondent and the reasonable inferences to be drawn therefrom, sustain the Board's findings of the material basic facts pertaining to the operation of the Group and the Committees and the interference and domination on the part of the respondent.

Decree of enforcement will be entered.