**NATIONAL LABOR RELATIONS BOARD**

**v.**

**JAY CO., Inc.**

No. 13869.

United States Court of Appeals, Ninth Circuit.

July 2, 1954.

As Modified on Rehearing Nov. 9, 1955.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Marcel-Mallet Prevost, Asst. Gen. Counsel, Maurice Alexandre, Alan R. Waterstone, Washington, D. C., Daniel J. Harrington, Los Angeles, Cal., for petitioner.

Richard A. Perkins, Los Angeles, Cal., for respondent.

Before BONE, LEMMON and FEE, Circuit Judges.

LEMMON, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order and respondent seeks to have the order set aside.

The Board's order approved and followed findings of the Trial Examiner that Henry Vista Shannon, an employee, was discharged by Respondent for his role in disbanding the Jay Company Employees Association, and that respondent's actions encouraged membership in that organization, in violation of Section 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158. The order requires respondent to cease and desist from the unfair labor practices found and "in any other manner interfering with, restraining or coercing employees in the exercise of the right to self-organization, to form, join, or assist the Union or any other labor organization, to bargain collectively * * *."

It was found that during the summer of 1951, Furniture Workers, Upholsterers and Wood Workers Union, Local 576, Independent, as well as an affiliate of AFL and an affiliate of CIO each put on a campaign to organize respondent's employees. Joseph Josephson, president of respondent, at the request of a group of the employees, assembled the employees in the plant and addressed them on company time. He advocated the formation of a company union. Following the address, the employees met in the shop and proceeded to organize the Jay Company Employees Association and Shannon was elected president. In succeeding days a contract was negotiated and entered into between Association and respondent which required an employee who was a non-member to sign an application for membership in Association within 31 days after entering employment and further provided that membership in good standing therein was a condition to continued employment.[1] New employees were informed by the officers and agents of respondent that they were obliged to join.

On either January 30 or 31, 1952 Shannon called a meeting of Association members, at which he claimed respondent had not lived up to the terms of the contract and advised that the Association disband. A vote then taken favored Shannon's proposal. On January 31 a letter signed by Shannon and two other Association officers addressed to respondent informing it of this action and requesting a meeting with management was placed on the desk of Theo. Deitch, the plant superintendent. On February 1 Deitch called Shannon into his private office and said to him, "I (am) ashamed of (your) attitude, (your) work record and (your) attempts to sell (yourself) and the company down the river, to sell (your) union short, and generally (to engage in) conduct unbecoming any member of society." At the end of the day Shannon was discharged.

On February 4, Josephson informed Dietz and Berkowitz, assistant production manager, that he was undecided whether to close the plant or not because of the disbanding of the Association and that they were not to allow any employee into the plant the following morning until he had a chance to address them. He did speak to them on the following morning and stated according to Berkowitz, "things were not right; the tables was costing more than (I) had figured and if another union came in (I do) not know, myself, what (I would) do, whether (I) would contract it out back east, or whether (I will) close down . . . (I do) not know what (I am) going to do, but for the time being the plant (is) closed". A meeting of the employees followed at which they voted to retain the Association. Josephson, upon being informed of this action, congratulated the employees and promptly permitted them to go to work.

On August 22, 1952, respondent mailed a registered letter to Shannon offer-

1. It is conceded that the contract was in violation of Section 8(a) (3) since no election had been conducted by the Board authorizing the making of such contract.

ing reinstatement to him. The letter was returned by the Post Office. It had not been delivered to the addressee because of absence of Shannon from the address, the only address of Shannon known to respondent. This letter was also posted in the plant and through the posting Shannon learned about the offer. A month after the mailing Shannon presented himself at the plant to accept the offer. In the meantime his position had been filled; so on that ground he was refused employment.

The Procedural Question.

On February 5, 1952 Shannon filed a timely charge alleging his discriminatory discharge on February 1. On July 7, 1952 the General Counsel issued a complaint alleging Shannon's unlawful discharge. July 14, 1952, Local 576, Independent, filed a charge alleging respondent's unfair labor practices in that "The employer did form and does dominate the administration of the Jay Company Association". On July 23, 1952 the General Counsel issued an "Amended and Consolidated complaint" alleging the unfair labor practices set forth in the two charges. Respondent asserts that since the second charge was filed more than six months after the unfair labor practices set forth therein the complaint was invalid under Section 10(b) of the Act. The Board concluded that the Shannon charge was sufficient to support the entire complaint. We agree.

Subsequently to the Board's Decision and Order, the Board administratively found that Local 576 had not been in compliance with Section 9(h) of the Act[2] at the time of the issuance of the Amend-

ed and Consolidated Complaint. It would therefore appear that the charge made by Local 576 raised no substantive issue. But Shannon's charge, besides claiming his discharge because of his activities in behalf of Association, alleged "By these and other acts the company interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed by Sec. 7 of the Act". The Notice of Hearing stated that "Copies of the Charges upon which the Amended and Consolidated Complaint is based are attached hereto", but inadvertently the only charges attached were those of Local 576.

The Act required that the complaint contain a statement of charges. This requirement was met. There is no statutory or regulatory condition that the *charges be attached* to the complaint.[3] It is to be noted that respondent was apprised of the nature and scope of the charges from the complaint. If there be deduced any procedural neglect in this regard, and we find none, respondent was in nowise prejudiced.[4]

Sufficiency Of The Evidence.

We have considered the evidence before the Examiner. Considered as a whole we conclude that there was before him and the Board substantial evidence to support the findings.

Respondent contends that management only expressed to the employees its opinion on the question of the advantages to flow from a company union and that such was privileged under Section 9(c). But respondent went much further than that. Respondent locked out the employees until they, under the

---

2. 29 U.S.C.A. § 159(h).

3. 29 U.S.C.A. § 160(b).

4. The accusation that respondent engaged in unfair labor practices by forming, dominating and supporting the Association was not specifically set forth in the original charge. But the actions of respondent occurred within six months prior to the filing of the original complaint and are embraced therein. Respondent agrees that since Local 576 was not in compliance with Section 9(h), that portion of the Amended and Con-

solidated Complaint alleging domination of Association cannot be supported by the charge filed by Local 576. This is not fatal because the charge filed by Shannon is sufficiently broad to embrace the entire complaint. Further, the complaint is not limited to the precise allegations in the charge but may include other matters closely related which define more precisely its allegations. N. L. R. B. v. Waterfront Employers of Washington, 9 Cir., 211 F.2d 946; N. L. R. B. v. Martin, 9 Cir., 207 F.2d 655; N. L. R. B. v. Wemyss, 9 Cir., 212 F.2d 465.

pressure of the fear of losing their employment, reestablished the Association. The question whether the organization is employer-dominated depends upon the state of mind of the employee. N.L.R.B. v. Sharples Chemicals, 6 Cir., 209 F.2d 645. These employees acted as they knew their employer desired them to act and feared the consequences if they did not so act. Cf. N.L.R.B. v. Wemyss, 9 Cir., 212 F.2d 465. The evidence fully justifies the conclusion that respondent formed, dominated, supported and interfered with the activities of the Association, in violation of Section 8(a) (2) of the Act.

■ Nor are we impressed with the argument that Shannon was discharged because of his inefficiency. The evidence fully justifies the inference that union activities were the motivating cause.

Ordering Reinstatement Of And Back Pay to Shannon Was Proper.

■ The Board ordered that respondent reinstate Shannon to his former or substantially equivalent position and to pay to him wages which he normally would have earned from February 1, 1951 (date of respondent's discrimination) to the date that respondent's offer of reinstatement is made, excluding certain short periods, the main exception being later noted.

Section 102.81 of the Board's Rules and Regulations (Title 29 C.F.R.) permits service of papers by registered mail, and states that the return post-office receipt shall be proof of service. This proof was not available because the letter was not delivered. Service by this method is not exclusive. It may also be made "in any manner provided for the service of papers in a civil action by the law of the State in which the hearing is pending". Personal service is proper.[5] Respondent made no effort to notify Shannon other than by mailing the letter. Shannon had been unlawfully dis-

charged. It was respondent's duty to remedy the wrong. The loss of employment frequently is followed by a change in domicile. A few inquiries might and probably would have resulted in learning where Shannon could have been contacted. The Board was justified in concluding that that duty had not been fulfilled.

The Board tolled the back pay liability between the date of the mailing of the letter and the date Shannon returned for employment. It did so because of the conclusion that the offer of reinstatement was mailed in good faith.

We conclude that the action of the Board was well within its discretion.[6]

■ Those provisions in the order requiring the disestablishment of Association are within the Board's province to the end that any union representation in the future result from untrammeled choice. Westinghouse Electric & Mfg. Co. v. N.L.R.B., 2 Cir., 112 F.2d 657. That power is conferred by Section 10 (a) and (c) of the Act, 29 U.S.C.A. § 160(a, c). Whether disestablishment is necessary to affect the employees' freedom of choice is for the board's determination. We find no abuse of its discretion.

In one respect we consider the Board's order to be too broad. The evidence does not show extensive anti-union activities or activities of an aggravated character evincing an attitude of general opposition to rights of employees. A blanket restraint is unwarranted. N.L.R.B. v. Nesen, 9 Cir., 211 F.2d 559. Subsection (e) of Paragraph 1 of the Board's order will be eliminated.

As so modified the Board's order will be enforced.

### Order on Rehearing

PER CURIAM.

By direction of this Court, the above entitled appeal was set down for rehear-

---

5. Section 411, California Code of Civil Procedure.

6. Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 189, 61 S.Ct. 845, 85 L.Ed. 1271. Section 10(c), 29 U.S.C.A. § 160 (c).

ing after an opinion had been filed herein on July 2, 1954. At the rehearing, petitioner, National Labor Relations Board, alone put in an appearance, and Jay Company, Inc., neither appeared nor filed a brief or other appearance, and the matter was taken under submission upon the argument of the Board, and the Court now being fully advised in the premises and based upon the above circumstances it is hereby

Ordered that the opinion of this Court in the above entitled cause, handed down on July 2, 1954, be hereby modified by striking out the last two paragraphs, beginning with the words "In one respect" and ending with the words "will be enforced", and substituting therefor the following paragraph:

"The Board's order will be enforced". See National Labor Relations Board v. Cheney California Lumber Co., 1946, 327 U.S. 385, 389, 66 S.Ct. 553, 90 L.Ed. 739.